## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF ENVIRONMENTAL PROTECTION,<br><br>*Plaintiff/ Counterclaim Defendant*<br><br>v.<br><br>LOCKHEED MARTIN COMPANY,<br><br>*Defendant/ Counterclaim Plaintiff/ Third-Party Plaintiff*<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>*Third-Party Defendant* | CASE NO. 09-CV-00821 (SHR)<br>(Hon. Sylvia H. Rambo) |

## THIRD-PARTY COMPLAINT

Pursuant to Rule 14(a)(1) of the Federal Rules of Civil Procedure, Original

Defendant and Counterclaim Plaintiff Lockheed Martin Company ("Lockheed

Martin") brings this Third-Party Complaint against the United States of America

for contribution and declaratory relief under Section 113 of the Comprehensive

Environmental Response Compensation and Liability Act, 42 U.S.C. § 9613

("CERCLA"), and in support thereof avers as follows:

## PARTIES

1.      Lockheed Martin is informed and believes that Original Plaintiff and

Counterclaim Defendant Commonwealth of Pennsylvania, Pennsylvania

Department of Environmental Protection ("PADEP" or the "Commonwealth"),

resides and may be found in Harrisburg, Pennsylvania.  PADEP is an executive

agency of the Commonwealth of Pennsylvania.

2.      Lockheed Martin is a Maryland corporation.  Martin Marietta

Corporation ("MMC"), a corporate predecessor to Lockheed Martin, conducted

work pursuant to contracts with the United States Atomic Energy Commission

("AEC"), a former agency of the United States of America, at the Nuclear

Research Reactor Facility in the Quehanna Wild Area of the Moshannon State

Forest in Clearfield County, Pennsylvania (the "Quehanna Facility") from 1962 to

1967.

3.      Third-Party Defendant is the United States of America (the

"Government").  The Government resides and may be found in this judicial

district.  The Government conducts business in this judicial district through its

various agencies, including the Department of Energy, the Nuclear Regulatory

Commission, the Environmental Protection Agency, the General Services Administration, and their predecessors in interest, and through its former agencies.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this Third-Party Claim under 28 U.S.C. §§ 1331, 1346 and 2201, and 42 U.S.C. §§ 9607(a) and 9613(b).

5.     Venue is proper in this judicial district under 42 U.S.C. § 9613(b), and 28 U.S.C. § 1391(b) and (e), because the Third-Party Defendant resides and/or may be found within this district.

## GENERAL ALLEGATIONS

### Background

6.     This litigation involves costs the Commonwealth allegedly incurred during the decommissioning of the former Quehanna Facility, where, beginning in the late 1950s, radioactive materials were processed, stored, and handled under federal government contracts and licenses.

7.     The Quehanna Facility was originally constructed in 1957 after the Commonwealth enacted legislation to establish a nuclear research facility, anticipating that the project would contribute to the area's economy.  In 1958, the Government issued a license to Curtiss-Wright Corporation ("Curtiss-Wright") to construct and operate a pool reactor at the Quehanna Facility pursuant to a contract with the AEC.  The license also authorized Curtiss-Wright's construction and use

3

of hot cells and various laboratory areas. Pennsylvania State University ("Penn State") acquired the Facility in the 1960s through donation by Curtiss-Wright, and occupied a portion of the Site for its own research activities.

8.       Lockheed Martin's involvement with the Quehanna Facility relates to MMC's work at the facility pursuant to federal government contracts and licenses with the AEC beginning in July of 1962. Pursuant to those agreements, MMC worked as a government contractor on the research, processing, and development of Strontium 90 ("Sr-90") isotopic fuel and the production of Space Nuclear Auxiliary Power generators using Sr-90 (hereinafter referred to as the "SNAP generator program"). AEC's successor in regards to the contract work is the United States Department of Energy ("DOE") and its successor in regards to the radioactive materials licensing is the Nuclear Regulatory Commission ("NRC"). *See, e.g.,* 42 U.S.C. §§ 5801, 5811-21.

9.       Pursuant to its contract with the Government to develop the SNAP generator program, MMC leased from Penn State portions of the Quehanna Facility not occupied by Penn State from 1962 to 1967, including one or more of the Facility's hot cells. MMC's lease with Penn State was at all times an allowable cost under its contract with the AEC.

10.    In conjunction with MMC's contract operations at the Facility between 1962 and 1967, MMC possessed an AEC Byproduct Material License that authorized MMC's possession and use of Sr-90 at the Facility.

11.    The Government required MMC to use Sr-90 through federal specifications and referenced it in contracting documents that controlled MMC's work at the Quehanna Facility.

12.    At all times, MMC's use and possession of Sr-90 at the Quehanna Facility, and its operations at the facility, were pursuant to, and in conformance with, government byproduct material licenses and government contracts.

13.    Pursuant to federal procurement regulations and procurement contracts between MMC and the Government, all equipment, parts, tooling, supplies, raw materials and other materials acquired or manufactured at the Quehanna Facility, the cost of which was chargeable to a government contract, became the property of the Government.  Under these regulations and contracts, the Government acquired ownership of materials, including Sr-90, used in the SNAP generator program and, therefore, owned any alleged waste generated in the performance of these contracts and any such materials that were allegedly disposed of at the facility.

14.    The Government also arranged by contract, license, agreement, act or otherwise, either directly or indirectly, for the acquisition, transportation,

treatment, and/or alleged disposal of Sr-90 and other radioactive materials at the Quehanna Facility.

15.    The Government expressly assumed the risk of contamination and the risk of third-party claims arising from such contamination in the contract performed at the Quehanna Facility by MMC.  MMC relied upon these promises by the Government in agreeing to use the materials and processes necessary to engage in the development and production of the SNAP generator program.

16.    Pursuant to the government contract relating to the SNAP generator program at the Quehanna Facility, the Government agreed to fully indemnify MMC against claims for public liability, including the reasonable costs of investigating and defending suits for damage for public liability claims.

17.    Pursuant to its government contract related to the SNAP generator program, all costs related to claims for public liability against MMC are allowable costs, including the reasonable costs of investigating and defending suits for damage for public liability.

18.    MMC's government contract and government byproduct material licenses covering its work at the Quehanna Facility were terminated in 1967.  As a prerequisite to the 1967 termination of the government contract and licenses, MMC conducted a partial decontamination of the Quehanna Facility pursuant to standards established by the Government and Penn State.

19. Because decontamination of the Facility pursuant to the Government's standards prior to MMC's exit was an integral part of MMC's government contract operations, decontamination was an allowable cost under its government contract.

20. Throughout MMC's partial decontamination of the Quehanna Site, it was understood by Penn State, the Government, and MMC that Penn State would assume all responsibility for any residual Sr-90 at the Quehanna Facility present after MMC ceased work at the Facility.

21. Following significant oversight and approval of MMC's partial decontamination by both the Government and Penn State, MMC successfully terminated its AEC byproducts material license for Sr-90 in June of 1967.

22. On the very day MMC's byproduct material license for Sr-90 was terminated, Penn State became the AEC license holder and was authorized to possess the existing Sr-90 at the Quehanna Facility.

23. Upon information and belief, at or around the time of the transfer, the Commonwealth, including Penn State, and the Government had knowledge that unknown quantities of Sr-90 were present at the Quehanna Facility in areas that could not be examined for contamination, such as the interior of pipes, and that these quantities were assumed to be over the allowable limit.

24. The Commonwealth subsequently leased the Quehanna Facility to other parties, including ARCO, ARCO Chemical Company, Babcock & Wilcox

Power Generation Group, Inc., Nuclear Materials and Equipment Corporation, and their affiliates (the "ARCO Entities"), that continued to use radioactive materials at the Facility pursuant to Government oversight and licenses.

25.    The ARCO Entities conducted operations at the Quehanna Facility for over a decade and possessed Government licenses to possess and use radioactive materials at the Facility, including both Cobalt-60 and Sr-90.

26.    At some point beginning at the latest in the 1990s, PADEP allegedly began decommissioning the Quehanna Site pursuant to direction from the NRC, the successor to the AEC's byproduct material licensing responsibilities and an agency of the Government.

27.    The NRC Byproduct Material License for residual Sr-90 contamination was transferred to the Commonwealth in December 2002 and was managed by PADEP.

**Procedural Background**

28.    On April 30, 2009, Original Plaintiff PADEP instituted this civil action against Original Defendant Lockheed Martin under CERCLA and environmental statutes and common law of the Commonwealth, seeking reimbursement of costs allegedly incurred by PADEP in connection with its responsibility to decommission the Quehanna Facility.  PADEP amended its complaint against Lockheed Martin on May 7, 2009.  In its Amended Complaint,

8

PADEP alleges that Lockheed Martin's predecessor, MMC, left behind and failed to properly dispose of some of the Sr-90 in the hot cells, piping, and tanks after it ceased its operations at the Facility.  The Amended Complaint alleges that the Commonwealth, including PADEP, has incurred in excess of $20 million in unreimbursed response costs related to the removal of Sr-90 at or from the Quehanna Facility as a result of MMC's activities at the Facility.

29.     On July 6, 2009, Original Defendant Lockheed Martin filed a motion to dismiss all claims, arguing that PADEP failed to state a CERCLA claim and that PADEP's state law claims were preempted by the federal Atomic Energy Act. This Court denied Lockheed Martin's motion to dismiss on February 1, 2010.

30.     On February 18, 2010 Lockheed Martin answered the Amended Complaint and counterclaimed against Original Plaintiff PADEP under Section 113 of CERCLA and Section 705 of the Pennsylvania Hazardous Sites Cleanup Act.

## FIRST CLAIM FOR RELIEF

(Owner/Operator Liability under CERCLA § 107(a)(2), 42 U.S.C. § 9607(a)(2),

and CERCLA § 113(f), 42 U.S.C. § 9613(f))

31.     Lockheed Martin denies any liability under CERCLA arising out of its activities at the Quehanna Facility, as alleged by Original Plaintiff PADEP. However, in the event that Lockheed Martin is held liable, Lockheed Martin is entitled to contribution or other recovery against the Government.  Paragraphs 32 to 45 establish Lockheed Martin's Third-Party CERCLA contribution claims against the Government should Lockheed Martin be held liable to Original Plaintiff PADEP.

32.     The allegations of Paragraphs 1 through 31 of this Third-Party Complaint are incorporated by reference as set forth in full.

33.     The Government is a "person" within the meaning of Sections 101(21) and 113(f)(1) of CERCLA, 42 U.S.C. §§ 9601(21) and 9613(f)(1), and has waived its sovereign immunity pursuant to Section 120(a) of CERCLA, 42 U.S.C. § 9620(a).

34.     Lockheed Martin is a "person" within the meaning of Sections 101(21) and 113(f)(1) of CERCLA, 42 U.S.C. §§ 9601(21) and 9613(f)(1).

35.     The Quehanna Facility is a "facility" within the meaning of Section 101(9) of CERCLA, where hazardous substances, including Sr-90, have come to be located. 42 U.S.C. § 9601(9).

36.     Sr-90 is a "hazardous substance" as defined in Section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

37.     PADEP alleges in its Amended Complaint that there have been "releases or threatened releases" of hazardous substances at the Quehanna Facility that have caused PADEP to incur "response" costs, as defined in Sections 101(22) and 101(25) of CERCLA.  42 U.S.C. §§ 9601(22), 9601(25).

38.     To the extent that Lockheed Martin is found liable to PADEP under its Amended Complaint, the Government is also liable under CERCLA as a party who owned and operated the Quehanna Facility or equipment and materials located therein when hazardous substances were allegedly disposed of, dumped, spilled, abandoned, and/or released at or from the Facility, as set forth in Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

39.     The Government falls within the class of persons subject to contribution under Sections 113(f) and 107(a) of CERCLA, 42 U.S.C. §§ 9613(f), 9607(a), because

        a)     for decades beginning in the 1950s, the Government owned,
               operated, and controlled the materials and equipment used at

11

the Quehanna Facility, including, at all times, Sr-90 and other materials and equipment used in the production of SNAP generators, and

b)      for decades beginning in the 1950s, the Government controlled, licensed, specified, participated in, and made decisions about the use, handling, storage, transport, and alleged disposal of hazardous substances, including Sr-90, at or near the Quehanna Facility.

40.     PADEP has filed a civil action against Lockheed Martin pursuant to CERCLA Section 107, 42 U.S.C. § 9607(a), therefore, Lockheed Martin is authorized, pursuant to CERCLA Section 113(f)(1), 42 U.S.C. § 9613(f)(1), to seek contribution against the Government in this action.

41.     The Government is therefore liable to Lockheed Martin, pursuant to Sections 113(f) and 107(a) of CERCLA, 42 U.S.C. §§ 9613(f), 9607(a), for any and all costs related to the Quehanna Facility that Original Plaintiff PADEP seeks to recover from Lockheed Martin.

## SECOND CLAIM FOR RELIEF

(Arranger Liability under CERCLA § 107(a)(3), 42 U.S.C. § 9607(a)(3), and

CERCLA § 113(f), 42 U.S.C. § 9613(f))

42.     The allegations of Paragraphs 1 through 41 of this Third-Party

Complaint are incorporated by reference as set forth in full.

43.     To the extent that Lockheed Martin is found liable to PADEP under

its Amended Complaint, the Government falls within the class of persons subject

to contribution under Sections 113(f) and 107(a)(3) of CERCLA, 42 U.S.C. §§

9613(f), 9607(a)(3).  Through operation of government contracts and licenses, the

Government itself arranged for any alleged disposal and/or treatment of wastes at

the Quehanna Facility.  Further, the Government controlled the operations at the

Facility, directed, supervised, and licensed the use, storage, transportation, and any

disposal of waste, and knew or should have known that residual Sr-90

contamination was inherent in the production processes which were performed for

and at the Government's direction.  It is a result of these activities that Original

Plaintiff PADEP alleges that Sr-90 and other substances entered the environment.

44.     PADEP has filed a civil action against Lockheed Martin pursuant to

CERCLA Section 107(a), 42 U.S.C. § 9607(a), therefore, Lockheed Martin is

authorized, pursuant to CERCLA Section 113(f)(1), 42 U.S.C. § 9613(f)(1), to

seek contribution against the Government in this action.

13

45.     The Government is therefore liable, pursuant to Section 107(a) of

CERCLA, 42 U.S.C. § 9607(a), for any and all costs related to the Quehanna

Facility that Original Plaintiff PADEP seeks to recover from Lockheed Martin.

### THIRD CLAIM FOR RELIEF

(Declaratory Relief Under CERCLA § 113(g), 42 U.S.C. § 9613(g) and the
Declaratory Judgment Act, 28 U.S.C. § 2201)

46.     The allegations of Paragraphs 1 through 45 of this Third-Party

Complaint are incorporated by reference as set forth in full.

47.     An actual legal controversy has arisen and now exists between Third-

Party Plaintiff and the Government, and Third-Party Plaintiff seeks a judicial

declaration of rights and legal relations with respect to the Government, pursuant

to CERCLA Section 113(g)(2), 42 U.S.C. § 9613(g)(2), and 28 U.S.C. § 2201.

48.     A declaratory judgment is appropriate and is in the interests of justice

because, among other reasons, it will obviate the need for multiple lawsuits,

thereby providing a complete resolution of the disputes between the parties.

### PRAYER FOR RELIEF

WHEREFORE, Third-Party Plaintiff, Lockheed Martin, respectfully prays

this Honorable Court to enter judgment against the Government as follows:

a)     For contribution under CERCLA for all costs and damages relating to

Quehanna Facility that Original Plaintiff PADEP seeks from Lockheed Martin, or

14

that amount that is equitably allocable to the Government, in an amount to be proven at trial;

b)      For a declaration that the Government is liable under CERCLA for any and all of Third-Party Plaintiff's costs and damages relating to the Quehanna Facility, including any future costs;

c)      For Third-Party Plaintiff's reasonable attorney's fees and costs of investigating the potential responsibility of the Government, and for conducting other reasonable and related investigations;

d)      For Third-Party Plaintiff's costs of litigation; and

e)      For such other and further relief as the Court may deem just and proper.

Date: March 4, 2010                    Respectfully submitted,


                                       */s/ Julie E. Ravis*
                                       David J. Parsells, PA Attorney I.D. No. 37479
                                       Julie E. Ravis, PA Attorney I.D. No. 203101

                                       STEVENS & LEE
                                       111 North Sixth Street, P.O. Box 679
                                       Reading, PA 19603
                                       Phone: 610.478.2210
                                       Fax: 610.988.0845
                                       djp@stevenslee.com
                                       jera@stevenslee.com

                                       Raymond B. Ludwiszewski, D.C. Bar No. 420540
                                       rludwiszewski@gibsondunn.com
                                       Michael K. Murphy, D.C. Bar No. 468907
                                       mmurphy@gibsondunn.com
                                       Jessica D. Greenston, D.C. Bar No. 978361
                                       jgreenston@gibsondunn.com

                                       GIBSON, DUNN & CRUTCHER LLP
                                       1050 Connecticut Avenue, N.W.
                                       Washington, DC 20036
                                       Tel. 202.955.8500

                                       *Counsel for Lockheed Martin Corporation*