IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF ENVIRONMENTAL PROTECTION,**<br><br>  **Plaintiff and Counterclaim Defendant**<br><br>v.<br><br>**LOCKHEED MARTIN CORPORATION,**<br><br>  **Defendant and Counterclaim Plaintiff and Third-Party Plaintiff**<br><br>v.<br><br>**THE COMMONWEALTH OF PENNSYLVANIA and THE DEPARTMENT OF CONSERVATION AND NATURAL RESOURCES,**<br><br>  **Third-Party Defendants** | CIVIL NO. 1:09-CV-0821<br><br>JUDGE SYLVIA H. RAMBO |

# **M E M O R A N D U M**

  The Commonwealth of Pennsylvania, Department of Environmental Protection, ("PADEP") filed a complaint, and then an amended complaint, seeking to recover from Defendant Lockheed Martin Corporation ("LMC") response costs incurred in the cleanup of Strontium-90, ("Sr-90"), a radioactive and hazardous nuclear byproduct material, at or from the Quehanna Wild Area Nuclear Site in the Quehanna Wild Area of the Moshannon State Forest in Clearfield County,

Pennsylvania, (the "site"). (*See* Docs. 1, 3.) Defendant LMC's, predecessor, the Martin-Marietta Corporation, was the last known user of Sr-90 at the site.[1]

PADEP's cost recovery claims arise from Section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended 42 U.S.C. §§ 9601-9675, ("CERCLA"), and certain environmental statutes and common law of the Commonwealth of Pennsylvania, including the Hazardous Sites Cleanup Act, ("HSCA"), 35 P.S. §§ 6020.101-6020.1305; the Solid Waste Management Act, ("SWMA"), 35 P.S. §§ 6018.101-6018.1003; the Clean Streams Law, ("CSL"), 35 P.S. §§ 691.1-691.1001; and Section 1917-A of the Administrative Code of 1929, 71 P.S. § 510-17.

LMC filed a motion to dismiss PADEP's amended complaint, which motion was denied by this court in a memorandum and order dated February 1, 2010. (Doc. 28.) On February 18, 2010, LMC filed an answer to the amended complaint and two counterclaims against PADEP. (Doc. 30.) LMC's counterclaims assert that if it is held liable for PADEP's response costs associated with the remediation of the Sr-90 then it seeks contribution for those costs against PADEP. Specifically, LMC states that PADEP is liable under CERCLA pursuant to sections 107(a) and 113(f)(1), 42 U.S.C. §§ 9607(a) and 9613(f)(1), as well as under state law pursuant to the HSCA, 35 Pa. Cons. Stat. Ann. § 6020.705. On March 16, 2010, PADEP filed an Answer to LMC's counterclaim denying that it is liable for contribution under either under federal or state law.

---

[1] Both parties make no distinction between the actions of LMC and its predecessor Martin-Marietta Corporation. Accordingly, the court will refer to both entities simply as LMC.

In addition to its counterclaim against PADEP, LMC filed a Third-Party Complaint against the Commonwealth of Pennsylvania and another of its administrative agencies, the Department of Conservation and Natural Resources (collectively, "the Third-Party Defendants"). (Doc. 33.) In the Third-Party Complaint, LMC reiterates its position that it is not liable for the Sr-90 contamination at the site, and to the extent that the court finds that it is liable, the court should allocate the response costs among all responsible parties including PADEP and the Third-Party Defendants. These claims mirror those alleged in LMC's counterclaim in that LMC asserts that the Third-Party Defendants are liable pursuant to §§ 107(a) and 113(f)(1) of CERCLA, 42 U.S.C. §§ 9307(a) and 9613(f)(1), as well as under state law pursuant to the HSCA, 35 Pa. Const. Stat. Ann. § 6020.705.

In response to LMC's Third-Party Complaint, the Third-Party Defendants filed a motion to dismiss, (Doc. 49), in which they argue that LMC's claims must be dismissed either because they are immune from suit pursuant to the Eleventh Amendment or because they are immune from liability pursuant to state law. That motion has been fully briefed by the parties and is ripe for disposition by this court. For the reasons that follow, the court will grant the Third-Party Defendants' motion to dismiss the Third-Party Complaint because the court concludes that the Commonwealth of Pennsylvania has not waived its Eleventh Amendment immunity as to the claims brought by LMC in its Third-Party Complaint.

## I. Legal Standard: Eleventh Amendment

It is axiomatic that a State's "immunity . . . from suit in federal courts is a fundamental aspect of state sovereignty." *Lombardo v. Pa. Dep't of Pub. Welfare*, 540 F.3d 190, 194 (3d Cir. 2008) (*quoting N. Ins. Co. of N.Y. v. Chatham County*, 547 U.S. 189, 193 (2006).) This immunity is expressed in both the Eleventh Amendment, which grants a State immunity from suit in federal court by citizens of other states, as well as its own citizens, *see Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 616 (2002), and in a State's own inherent sovereignty, which is expressed in state law. *See Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 753-54 (2002) (stating that the Eleventh Amendment does not "explicitly memorializ[e] the full breadth of the sovereign immunity retained by the States when the Constitution was ratified," and that it "extends beyond the literal text of the Eleventh Amendment.")

As a general matter, under the Eleventh Amendment, a State cannot be sued by a private individual. *See Hans v. Louisiana*, 134 U.S. 1, 10 (1890). Furthermore, agencies, like PADEP and the DCNR, are entitled to immunity if they are agents or instrumentalities of the state. *See Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997). The parties do not dispute the both PADEP and DCNR were at all times acting on behalf of the Commonwealth of Pennsylvania.

There are three exceptions to Eleventh Amendment immunity: (1) Congress may abrogate the sovereign immunity of the states through statute; (2) a state may waive the immunity by consenting to suit; and (3) a federal court may enjoin a "state official" from violating federal law under the doctrine of *Ex Parte Young*. The first and third exceptions are inapplicable in the present case. LMC has

not argued that Congress abrogated the States' immunity in CERCLA, nor could it,[2] and it is not seeking to enjoin any state official. Thus, the Commonwealth's Eleventh Amendment immunity is intact with regard to CERCLA actions absent a waiver of that immunity.

**II.        Discussion**[3]

In its motion to dismiss LMC's Third-Party Complaint, the Third-Party Defendants argue that LMC's claims are barred by both the Eleventh Amendment and the Commonwealth's own separate sovereign immunity. Predictably, LMC argues that both immunities are inapplicable because the Commonwealth waived any immunity that it possessed when it chose to invoke the jurisdiction of the federal courts in filing this CERCLA action through PADEP.

The principle that a State can waive its Eleventh Amendment immunity by voluntarily invoking the jurisdiction of the federal courts, known as the voluntary invocation rule, emerged in early Supreme Court precedent. *See Gardner v. New Jersey*, 329 U.S. 565 (1947) (finding a waiver of Eleventh Amendment immunity where a State voluntarily appeared in bankruptcy court to file a claim against a

---

[2] With regard to the first exception, Congress may abrogate the sovereign immunity of the states only when legislation purporting to do so is enacted pursuant to a valid grant of constitutional authority, and abrogation may not be based upon the powers enumerated in Article I of the Constitution, including the Commerce Clause. *See Bd. of Trustees v. Garrett*, 531 U.S. 356, 363 (2001) (*citing Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 72-73 (1996)). Here, all parties seek recovery under 42 U.S.C. § 9607(a), a provision of CERCLA, and since CERCLA was enacted under the auspices of the Commerce Clause it does not constitute a congressional abrogation of the Commonwealth's otherwise intact Eleventh Amendment immunity.

[3] The factual allegations in dispute between the parties concerning the release of sr-90 and PADEP's response costs associated with remedying that release are well documented in the pleadings, (Docs. 3, 30, 33, and 37), as well as the court's February 1, 2010 memorandum and order, (Doc. 28), and will not be discussed in this memorandum because they are not essential for the disposition of the Third-Party Defendants' motion to dismiss.

common fund); *Gunter v. Atl. Coast Line R.R. Co.,* 200 U.S. 273, 284 (1906) (stating generally that "where a State voluntarily becomes a party to a cause and submits its rights for judicial determination, it will be bound thereby and cannot escape the result of its own voluntary act by invoking the prohibitions of the Eleventh Amendment"); *Clark v. Barnard*, 108 U.S. 436 (1883) (holding that a State's voluntary intervention in a federal court action to assert its own claim constituted a waiver of its Eleventh Amendment immunity).

More recently, the voluntary invocation rule was examined by the Supreme Court in *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.,* 535 U.S. 613 (2002). In *Lapides*, a professor employed by the Georgia state university system brought a lawsuit in Georgia state court against the State of Georgia and others alleging that the state officials improperly placed allegations of sexual harassment in his personnel files. The State defendants removed the case to federal court where they sought dismissal based upon, among other grounds, Eleventh Amendment immunity. The district court denied the State's motion to dismiss and found that the State had waived its Eleventh Amendment immunity by removing the case to federal court. After an appeal, the Court of Appeals for the Eleventh Circuit reversed the district court on the grounds that the official who sought removal—the State's attorney general—did not have the authority to waive the State's Eleventh Amendment immunity so the State could assert that immunity even after removal. Lapides sought review by the Supreme Court.

In a unanimous opinion, the Supreme Court reversed the Eleventh Circuit and held that by removing the case to federal court the State voluntarily invoked the jurisdiction of that court, and clearly waived its Eleventh Amendment

6

immunity. *See Lapides*, 535 U.S. at 624. The Supreme Court stated that in the context of waiver in litigation—as opposed to a more general waiver of immunity—the proper focus is "on the litigation act that State takes that creates the waiver," which in the *Lapides* was removal of the case to federal court. *Id.* at 620.

The Third-Party Defendants argue that the court should conclude that PADEP did not waive the Commonwealth's Eleventh Amendment immunity because unlike *Lapides*, in which the State of Georgia could have continued to litigate its claims in Georgia state court rather than seek removal to federal court, PADEP did not *voluntarily* file its claim in this court because CERCLA vests exclusive jurisdiction of all claims seeking reimbursement of response costs in federal court. *See* 42 U.S.C. § 9613(b). Thus, according to the Third-Party Defendants, the fact that PADEP invoked this court's jurisdiction was not a matter of choice, but one of necessity, and, therefore, not completely voluntary.

While it is true that the hallmark of whether a State has waived its Eleventh Amendment immunity in the context of litigation is the State's voluntary invocation of federal jurisdiction, the fact that a State has little choice but to litigate certain claims in federal court does not render its decision to do so involuntary. After all, PADEP was not compelled to file a CERCLA claim at all. It has asserted state law causes of action, including a claim under the HSCA, which mirrors CERCLA in all relevant respects, and these state law claims could have been brought in state court thereby avoiding the federal courts altogether.

Moreover, the Supreme Court's 1947 decision in *Gardner* dealt with an analogous set of circumstances. There, the State of New Jersey, through its comptroller, filed a proof of claim in a bankruptcy proceeding against a railroad

7

which owed the state more than $15,000,000 in taxes. The railroad and the bankruptcy trustee objected to the proof of claim on various grounds and sought to have the bankruptcy court adjudicate the claim. The attorney general for the State of New Jersey objected to the bankruptcy court's adjudication of the claim asserting that it violated the State's immunity from suit. The Supreme Court held that New Jersey could not simultaneously file a claim and ask that it be paid and at the same time object to the bankruptcy court's adjudication of the debtor's objections. The case turned on the fact that the State was seeking something from the debtor, and that no judgment was sought against the State's treasury. Any judgment would merely reduce what the State claimed that it was owed. In this context, the Supreme Court stated that a State waives any immunity that it might have to the bankruptcy court's adjudication of this claim.

   *Gardner* is instructive because, like PADEP in this case, which was required to filed a CERCLA action in federal court if it wanted to be reimbursed for response costs, the State of New Jersey had little choice but to participate in the federal bankruptcy proceeding if it wanted to be paid the taxes that it alleged were owed. Thus, the Third-Party Defendants' position is misplaced. Given the clarity of the Supreme Court's decisions in *Lapides* and *Gardner*, the court concludes that PADEP, in choosing to file its lawsuit in this court has waived the Commonwealth's Eleventh Amendment immunity as to certain claims. The relevant question of course is the extent of that waiver.

   *Gardner*, as well as other cases that arise in the context of CERCLA, imply that the scope of a State's wavier is to be narrowly construed. *See Gardner*, 329 U.S. at 574 (holding that a bankruptcy court could entertain objections to the

8

State of New Jersey's proof of claim, in part because, in doing so there was no chance that the State's fisc would be harmed); *United States v. Montrose Chem. Corp. of Calif.*, 788 F.Supp. 1485, 1492-93 (C.D.Cal. 1992) (Eleventh Amendment immunity waived as to compulsory recoupment counterclaims in tort by filing CERCLA action); *Oregon v. City of Rajneeshpuram*, 598 F.Supp. 1217, 1219 (D. Or. 1984) (by bringing action in federal court, state waives its Eleventh Amendment immunity with respect to all counterclaims arising out of same transaction or occurrence, "at least to the extent that the counterclaims do not exceed the amounts sought in the state's claim"); *Ga. Dep't of Human Res. v. Bell*, 528 F.Supp. 17, 26 (N.D. Ga. 1981) ("[B]y bringing suit against a private party the State waives its Eleventh Amendment immunity and consents to the court's jurisdiction of . . . counterclaim[s] asserted defensively, by way of recoupment, for the purpose of defeating or diminishing the State's recovery, but not for the purpose of obtaining an affirmative judgment against the State." (citations omitted).) These cases instruct that any waiver of the Commonwealth's immunity should be narrowly construed to extend only to those claims which are brought defensively for recoupment and set-off, and which arise out of the same transaction and occurrence.

Here, LMC has asserted both defensive counterclaims against PADEP, as well as a Third-Party Complaint against the Commonwealth of Pennsylvania and DCNR. Neither its counterclaim nor its Third-Party Complaint explicitly asserts a defensive recoupment claim; instead, both pleadings seek contribution from the Commonwealth under § 113(f) of CERCLA, 42 U.S.C. § 9613(f). The court acknowledges that LMC's Third-Party Complaint states that it seeks contribution only in the event that LMC is held liable, and since LMC's claims for contribution

9

are against Commonwealth parties, and PADEP's original claim is for reimbursement of response costs, it would appear that these claims merely seek to offset any liability that the court would ultimately attribute to LMC by the liability attributed to any of the Commonwealth parties. Nevertheless, given the posture of LMC's Third-Party Claims the court cannot conclude that they state a claim for recoupment.

To recover on a claim for recoupment, a party must establish that: (1) the claim arises from the same transaction or occurrence as the main claim; (2) it seeks relief of the same kind and nature as that sought by the main claim; and (3) the claim is defensive in nature and does not seek affirmative relief. *United States v. Am. Color and Chem. Corp.*, 858 F. Supp. 445, 451 (M.D. Pa. 1994) (citations omitted). Putting aside whether LMC could meet the first two prongs of this test, a point that is debatable, it clearly cannot meet the third prong. LMC brought these claims in a Third-Party Compliant seeking statutory contribution pursuant to CERCLA against entities not originally named in the lawsuit. Given this posture, it is too much for the court to conclude that these claims are defensive in nature.

LMC urges the court to look past the formalities of its pleading and states that its claims are actually more tantamount to counterclaims than true third party claims. The court disagrees. LMC filed a counterclaim against PADEP making the same allegations that it makes in its Third-Party Complaint. If its Third-Party claims are merely redundant of those claims it begs the question of why a Third-Party Complaint was necessary at all. In fact, the Commonwealth, through PADEP, appears to concede that LMC's counterclaims are permissible because it responded to those claims with denials of liability rather than a challenge to the

court's jurisdiction based on the Eleventh Amendment. Given the fact the LMC has already pled counterclaims for contribution and setoff against PADEP, the court cannot conclude that its Third-Party Complaint against the Commonwealth itself and DCNR is merely defensive.

Moreover, if permitted to go forward, LMC's Third-Party claims would enlarge the case beyond that which was brought by PADEP to include other Commonwealth actors and claims against those actors. While the end result that LMC seeks is simply to reduce its alleged liability to the Commonwealth, by choosing to sue other Commonwealth entities in its Third-Party Complaint, LMC has raised claims that do not fit within the narrow definition of recoupment. Since these claims are not recoupment claims they do not fall within any waiver of the Eleventh Amendment immunity that the Commonwealth of Pennsylvania may have made.

### III.   Conclusion

Consistent with the foregoing, the court concludes that any waiver by PADEP of the Commonwealth's Eleventh Amendment immunity was only as to those claims brought defensively in the nature of recoupment, and that LMC's Third-Party Complaint does not assert recoupment claims. Accordingly, the Third-Party Defendants' immunity remains intact as to the claims brought by LMC in its Third-Party Complaint and dismissal of those claims is appropriate. The court will issue an appropriate order.

s/Sylvia H. Rambo
United States District Judge

Dated: June 30, 2010.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF ENVIRONMENTAL PROTECTION,** : <br> : <br> **Plaintiff and Counterclaim Defendant** : <br> : <br> v. : <br> : <br> **LOCKHEED MARTIN CORPORATION,** : <br> : <br> **Defendant and Counterclaim Plaintiff and Third-Party Plaintiff** : <br> : <br> v. : <br> : <br> **THE COMMONWEALTH OF PENNSYLVANIA and THE DEPARTMENT OF CONSERVATION AND NATURAL RESOURCES,** : <br> : <br> **Third-Party Defendants** : | **CIVIL NO. 1:09-CV-0821** <br><br> **JUDGE SYLVIA H. RAMBO** |

# **O R D E R**

In accordance with the accompanying memorandum of law, **IT IS HEREBY ORDERED THAT** the Third-Party Defendants' motion to dismiss Lockheed Martin's Third-Party Complaint, (Doc. 49), is **GRANTED**. The Third-Party Complaint is dismissed as to all of the Third-Party Defendants.

                                                         s/Sylvia H. Rambo
                                                         United States District Judge

Dated: June 30, 2010.